UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN CLARK and,
MELODY CLARK,

       Plaintiffs,

v.

BANK OF AMERICA, N.A.,

       Defendants.

_____/

Case No. 2:12-cv-13034

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [#9] AND DENYING PLAINTIFFS' REQUEST TO AMEND**

Plaintiffs Brian and Melody Clark ("Plaintiffs") filed an action on July 10, 2012 in this Court against Defendant Bank of America, N.A. ("Bank") alleging wrongful foreclosure of their mortgage on residential property located in Clinton Township, Michigan. Plaintiffs originally alleged twenty-three claims against Defendant Bank but later abandoned the majority of their claims. The following claims remain: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605; (2) violation of Michigan's Foreclosure by Advertisement statute, Mich. Comp. Laws § 600.3205; (3) request for equitable, declaratory or injunctive relief; (4) breach of contract, (5) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b); and (6) violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691. Plaintiffs argue that the remaining claims should not be dismissed because Defendant Bank promised them a loan modification and wrongfully continued with foreclosure proceedings. Alternatively, in the event the

1

Court grants Defendant Bank's motion to dismiss, Plaintiffs ask the Court to grant them leave to file an amended complaint.

This Court GRANTS Defendant's motion to dismiss and DENIES Plaintiffs' request to file an amended complaint because any amendment would be futile.

I.   **Facts**

A.  **November 2008- Plaintiffs Execute Mortgage and Note**

On November 12, 2008, Plaintiff Brian Clark executed a promissory note for the purpose of purchasing a residential property located at 42449 Walker Street, Clinton Township, MI 48038 (the "Property"). (Def.'s Mot., Ex. 1, Mortgage Note.)  The loan was from Taylor Bean & Whitaker Mortgage Funding Group ("Lender") in the amount of $133,980.00.  *Id.* As security for the Mortgage Note, Plaintiffs granted Mortgage Electronic Registration System, Inc. ("MERS") a mortgage on the Property. (Def.'s Mot., Ex. 3, Mortgage.)  On November 20, 2008, the mortgage was recorded with the Macomb County Register of Deeds. *Id.*  On October 24, 2011, the mortgage was assigned from MERS to Defendant Bank, and was subsequently recorded with the Macomb County Register of Deeds on October 28, 2011. (Def.'s Mot., Ex. 3, Assignment of Mortgage.)

B.  **October 2010- Plaintiffs Applied for a Loan Modification**

On October 29, 2010, Plaintiffs applied for a loan modification with Defendant Bank. (Compl. ¶ 48.)  Plaintiffs made regular payments of approximately $1,176 per month. (Compl. ¶ 12.)  On March of 2011, Defendant Bank approved Plaintiffs for a trial loan modification, and told Plaintiffs to make three lower monthly payments of

$1,063.71. The lowered monthly payments were to begin on April 1, 2011, and Plaintiffs timely made all three payments (Compl. ¶ 14.)

### C. March 2012-Loan Modification Denied

During the trial loan modification period, Plaintiffs provided all information and documentation requested by Defendant Bank including the application package, hardship letter, bank statements, paystubs, W2's, and full tax return. (Compl. ¶ 23-24.) Plaintiffs frequently contacted Defendant Bank during the trial loan modification period, at which point Defendant Bank instructed Plaintiffs that the modification papers would be forthcoming and they should continue making the trial modification payments. (Compl. ¶¶ 16, 17.)   In March of 2012, Defendant Bank told Plaintiffs that their loan modification was denied because the Property was not insured by a FHA single family mortgage. (Compl. ¶ 18.)   Plaintiffs did not receive a denial letter or any other written response to their loan modification request. (Compl. ¶ 33.)

### D. April 2012-Plaintiffs Sent Qualified Written Request

On April 13, 2012, Plaintiffs sent a qualified written request ("QWR") to Defendant Bank. This included their names, loan number, and Property address. (Compl. ¶ 39.)   The QWR included a statement indicating why Plaintiffs believed their mortgage account contained an error. Defendant Bank received a copy of the QWR but did not lawfully and properly respond to the request. Rather, Defendant Bank continued its foreclosure proceedings against the Property and a sheriff's sale was set for July 27, 2012. (Compl. ¶¶ 40-42, 46.)   During the pendency of the QWR, Plaintiffs initiated a reinvestigation pursuant to 15 U.S.C § 1681s-2(b), by contacting numerous national credit reporting agencies, via certified mail, for the purpose of disputing the reporting of

3

information on Plaintiffs' record, during the pendency of the QWR. (Compl. ¶ 44.) Additionally, during the pendency of the QWR, Defendant Bank failed to discontinue credit reporting. (Compl. ¶ 45.)

## II.   Standards of Review

### A.  Rule 12(b)(6) Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted); *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id* (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can provide the framework for a complaint; they must be supported by factual allegations. Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotation marks and citation omitted).

In reviewing and ruling upon a motion to dismiss, a court may look to documents that are "not formally incorporated by reference or attached to a complaint," if the "document is referred to in the complaint and is central to the plaintiff's claims." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999)(citation omitted).  A court's consideration of these documents does not convert the motion to dismiss into a motion for summary judgment. *Id.* (citation omitted).

### B.  Rule 15(a) Amendment Standard

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend is freely granted where justice so requires. However, a motion to amend a complaint should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile. *See Foman v. Davis*, 371 U.S. 178 (1962).

Prejudice may result from delay, but "[d]elay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994) (citing *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989) (quoting *Hagerman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)).   A proposed amendment of a complaint is "futile" if the amendment could not withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim.   *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

### III.   Analysis

A majority of Plaintiffs' claims against Defendant Bank have been voluntarily dismissed, however several still remain. These are: 1) violation of RESPA based on Defendant Bank's failure to lawfully and properly respond to the qualified written request (Count I); 2) violation of Michigan's Foreclosure by Advertisement statute Mich. Comp. Laws § 600.3205, based on Defendant Bank failure to provide written notice of Plaintiff's rights prior to Defendant Bank initiating foreclosure proceedings (Count III and XII), 3) entitlement to equitable, declaratory or injunctive relief, to reverse Defendant Bank's wrongful foreclosure (Count V); 4) breach of contract based on Defendant Bank's wrongful foreclosure (Count XI); 5) violation of the Fair Credit Reporting Act based on Defendant Bank's failure to cease reporting derogatory information during the 60 day reinvestigation pendency of Plaintiffs' QWR (Count XV); and 6) violation of the Equal Credit Opportunity Act based on Defendant Bank's failure to provide written notice and reasons why their loan modification was denied (Count XXIII).

Defendant Bank argues that Plaintiffs' breach of contract claim is barred by Michigan's statute of frauds because it is based on an oral promise of a loan modification. Defendant Bank further argues that even if Plaintiffs' breach of contract claim is not barred by the statute of frauds, it fails as a matter of law with all other claims in Plaintiffs' complaint. The Court begins its analysis with Defendant Bank's statute of frauds argument.

### A. Plaintiffs' breach of contract claim is barred by Michigan's statute of frauds (Count XI).

Plaintiffs' breach of contract claim is barred by Michigan's statute of frauds. Under Michigan's statute of frauds, a financial institution's promise "to waive a provision of a loan" is not actionable "unless the promise or commitment is in writing and signed with an authorized signature by the financial institution." Mich. Comp. Laws § 566.1329(2)(c). The statute "plainly states that a party is precluded from bringing a claim - no matter its label - against a financial institution to enforce the terms of an oral promise. . ." *Crown Tech Park v. D & N Bank, FSB*, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000). Plaintiffs contend that Defendant Bank orally promised that they qualified for a loan modification and that their application for a loan modification was completed. (Compl. ¶ 61.) Plaintiffs thus argue that Defendant Bank breached the mortgage agreement when it continued to foreclose on their property even after these oral promises. (Compl. ¶ 125.)

Defendant Bank was obligated to consider Plaintiffs' request but was not obligated to approve their request for a loan modification. Mich. Comp. Law § 600.3205(c) provides that the servicer "shall work with the borrower to determine whether the borrower qualifies for a loan modification." *See Dingman v. OneWest*, *FSB*,

7

859 F. Supp.2d 912, 922 (E.D. Mich. 2012) (observing that "these statutes merely require a lender to consider a borrower for a loan modification prior to commencing foreclosure by advertisement."). Defendant Bank approved Plaintiffs for a trial loan modification period but then denied Plaintiffs' request because their home did not have a FHA insured single family mortgage. (Compl. ¶ 18.) Because Plaintiffs do not allege Defendant Bank or its authorized agents signed a writing approving their loan modification but instead base their breach of contract claim on oral promises, this claim does not survive Defendant Bank's motion to dismiss.

Plaintiffs' request for leave to file an amended complaint would be futile for two reasons. First, Plaintiffs do not allege that foreclosure proceedings began at the time Plaintiffs were not in default. Since Defendant Bank's breach allegedly occurred after Plaintiffs' default on the mortgage, Plaintiffs have not and cannot maintain a cause of action for breach of contract because Defendant Bank was within its right to foreclose on the property. *See Flamm v. Scherer*, 198 N.W.2d 702, 706 (1972) (observing that "[t]he rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform").

Second, Plaintiffs allege that Defendant Bank's promise for a loan modification was not merely verbal but was provided in writing with the condition precedent that Plaintiffs make three monthly payments. (Pl.'s Resp. at 7.) However, Plaintiffs are referring to a Trial Period Plan (TPP) agreement; and as this Court has previously observed in *Heikkinen*, a TPP agreement, "does not ripen into a binding agreement, primarily because [it] bears only [the plaintiff]'s signature, and therefore, does not

objectively reflect a meeting of the minds regarding essential terms." *Heikkinen v. Bank of America, N.A.*, No. 11-12532, 2012 WL 628608, at *6 (E.D. Mich. February 27, 2012), (quoting *Voydanoff v. Select Portfolio Serv., Inc.*, No. 298098, 2011 WL 6757841, at *7 (Mich. Ct. App. Dec, 22 2011)).  Plaintiffs have not and cannot allege that Defendant Bank approved a permanent loan modification in a signed writing. Rather, Plaintiffs allege the opposite, that they were denied their request for a loan modification. (Compl. ¶ 18.)

**B.  Plaintiffs fail to state any claim upon which relief can be granted.**

**1.    Claim Under The Real Estate Settlement Procedures Act: Count I**

Plaintiffs argue that Defendant Bank violated RESPA when it failed to lawfully and properly respond to a qualified written request (Count I). A qualified written request is a:

> A written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C § 2605(e)(1)(B).

RESPA requires loan servicers to "provide a written response acknowledging receipt of the correspondence within 5 days" after receiving a QWR. 12 U.S.C § 2605(e)(1)(A). The statute further provides that the servicer "make appropriate corrections in the account of the borrower" no later than 30 days after receiving the QWR. 12 U.S.C § 2605 (e)(2)(A). Rather than alleging facts showing how Defendant

Bank violated RESPA, Plaintiffs only state the elements of a RESPA claim. Plaintiffs allege that they submitted a QWR on April 13, 2012, and Defendant Bank received the QWR and failed to lawfully and properly respond to it. (Compl. ¶ 39-42.)  Plaintiffs' mere recitation of statutory elements is insufficient to survive Defendant Bank's motion to dismiss. *See Twombly,* 556 U.S. at 555.

Plaintiffs also fail to allege facts showing the required causal link between the damages they claim occurred as a result of Defendant Bank's failure to lawfully and properly respond to their QWR. RESPA provides that if a loan servicer fails to respond to a QWR, the servicer may be held liable for "any actual damages to the borrower as a result of the failure." 12 U.S.C § 2605(f)(1); *see also Jarbo v. BAC Home Loan Servicing*,  No 10-12632 2010, WL 5173825, at *5 (E.D. Mich. Dec. 15, 2010) (observing that RESPA "requires a party to show actual damages from a violation of § 2605(e)(2)"). Any claim seeking relief based upon a "purported failure to respond to a QWR must be dismissed when the plaintiff fails to show damages resulting from the purported failure to respond." *Drew v. Kemp-Brooks,* 802 F. Supp. 2d 889, 898 (E.D. Mich. 2011). Even accepting as true Plaintiffs' allegations that they submitted a valid QWR and that Defendant Bank failed to properly respond, Plaintiffs do not allege facts showing that they sustained actual damages as a result of that failure. Such a claim is dismissed because Plaintiffs' bare allegations, without any factual support, are not sufficient to state a RESPA claim.

Plaintiffs request leave to amend so that they may attach a copy of the QWR with additional factual support that Defendant Bank received the QWR and failed to properly respond. (Pl.'s Resp. at 9.)  Plaintiffs also claim that this Court can infer that Plaintiffs

10

suffered actual economic harm from their allegations that: 1) Defendant Bank failed to provide the promised loan modification; and 2) Defendant Bank failed to cease derogatory reporting. (Pl.'s Resp. at 9.)  Finally, Plaintiffs' claim that this Court can infer that Plaintiffs suffered emotional harm as a result of Defendant Bank's failure to properly respond to their QWR. *Id.*  Even if this Court finds that emotional damages are part of "actual damages" permitted by RESPA, see *Wienert v. GMAC Mortgage Corp.*, 08-CV-14482, 2009 WL 3190420, at *10 (E.D. Mich. Sep. 29, 2009), this Court denies Plaintiffs' request to amend because Plaintiffs concede that no written promise of a loan modification was made, and make no factual allegations of a false credit report by Defendant Bank.

Plaintiffs fail to allege any causal link between Defendant's inadequate response to Plaintiffs' QWR and actual economic or emotional damages suffered. *See Mekani*, 752 F. Supp. 2d at 795-96 (observing that "[b]ecause Plaintiff has completely failed to allege any causal link between Defendant's allegedly inadequate response to his QRWs and any actual damages suffered, his Complaint fails to plead a plausible RESPA claim."). Moreover, the alleged harm Plaintiffs plead occurred prior to the time period of when the QWR was sent. Plaintiffs were denied a loan modification in March of 2011 and the QWR was not sent by Plaintiffs until April 13, 2012. (Compl. ¶ ¶ 18, 39.)  *See Collier v. Wells Fargo Home Mortgage,* No. 04–086, 2006 WL 1464170,  at * 3 (N.D. Tex. May 26, 2006) (finding that plaintiffs had failed to allege damages relating specifically to the time period after plaintiffs sent their QWRs, as distinct from damages flowing from the alleged improper servicing of their mortgage which had already occurred).

## 2. Violation of Michigan's Foreclosure by Advertisement Statute, Mich. Comp. Laws § 600.3205: Count III and XII

Plaintiffs allege that Defendant Bank violated Michigan's Foreclosure by Advertisement statute, Mich. Comp. Laws § 600.3205(a), when Defendant Bank failed to provide Plaintiffs with a required written notice, containing information of Plaintiffs' legal rights and loan modification opportunities. Plaintiffs argue that, because Defendant Bank failed to comply with the statutory loan modification procedure, the foreclosure is void. Rather than alleging facts showing how Defendant Bank violated Mich. Comp. Laws § 600.3205(a), Plaintiffs merely plead conclusory statements and simply restate the statutory language. (Compl. ¶ 69.) Such conclusory statements "are not entitled to the assumption of truth…" *Iqbal*, 556 U.S at 664.

Moreover, Plaintiffs have not and cannot demonstrate prejudice or actual harm as a result of Defendant Bank's failure to comply with these notice requirements. As Plaintiffs concede, there has been no foreclosure sale. (Pl.'s Resp. at 12.) "Under Michigan law . . . a mortgagor is not entitled to relief merely by alleging some defect in the notice of foreclosure. . ." *Rose v. Federal Home Loan Mort'g Corp.*, No. 1:09-cv-17, 2010 WL 3779002, at *10 (W.D. Mich. Sept. 21, 2010).

Plaintiffs fail to allege any facts showing that they would have been in a better position had Defendant Bank complied with Mich. Comp. Laws § 600.3205(a). *See Jaboro v. Wells Fargo Bank, N.A.*, No. 10-11686, 2010 WL 5296939, at *5 (E.D. Mich. Dec. 20, 2010)(holding that the plaintiff suffered no harm when "mortgagor would have been in no better position had notice been fully proper and that the mortgagor lost no potential opportunity to preserve some of any portion of his interest in the property. . .").

Plaintiffs' claim in Count XII, that Defendant Bank failed to notify Plaintiffs of the foreclosure proceedings, similarly fails for the reasons discussed above. *See Rose,* 2010 WL 3779002 at *10.

Plaintiffs also claim that Defendant Bank violated Mich. Comp. Laws § 600.3205(c).[1]  Plaintiffs fail to allege facts showing that they qualified for a loan modification under Mich. Comp. Laws §600.3205(c). Rather, Plaintiffs merely state the conclusion that they qualified, and then allege that Defendant Bank denied their request for a loan modification, (Compl. ¶ 18), and began foreclosure proceedings on Plaintiffs' property. This is not enough to state a claim for a § 600.3205(c) violation. Even if § 600.3205(a) or (c) were violated, the exclusive remedy is for Plaintiffs to ask that the foreclosure by advertisement be converted to a judicial foreclosure. *See* Mich. Comp. Laws § 600.3205(c)(8); *Smith v. Bank of America Corp.*, 485 F. App'x 749, 756 (6th Cir. 2012).

Finally, Plaintiffs' seek leave to file an amended complaint in order to provide more factual support showing how they were prejudiced by the alleged statutory violations.  Any amendment would be futile because Plaintiffs have conceded that all foreclosure proceedings have ceased. (Pl.'s Resp. at 12.)

### 3.  Claim Under The Fair Credit Reporting Act: Count XV

---

[1] Mich. Comp. Laws § 600.3205(c) describes the procedure for requesting a loan modification. Subsection (1) provides that "[i]f a borrower . . . contact[s] a person designated under section 3205a(1)(c) . . ., the person designated under section 3205a(1)(c) shall work with the borrower to determine whether the borrower qualifies for a loan modification." Mich. Comp. Laws §600.3205(c)(1). If the "borrower is not eligible for a loan modification . . . the mortgage lender may foreclose the mortgage under this chapter." Mich. Comp. Laws § 600.3205(c)(6).  If foreclosure proceedings are nonetheless initiated, the borrower may ask the circuit court to convert the foreclosure proceeding into a judicial foreclosure. Mich. Com. Laws § 600.3205(c)(8).

Plaintiffs argue that Defendant Bank violated the Fair Credit Reporting Act ("FCRA"), when it failed to cease reporting derogatory information during the 60 day reinvestigation pendency of the QWR. Section 168s-2 sets out two general obligations for persons furnishing credit information. The first set of duties are found in subsection (a) and apply to persons that report credit information to credit reporting agencies in the first instance, which provides that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s–2(a)(1)(A). The second sets of duties are found in subsection (b). These relate to the obligations of persons furnishing credit information once notified by a borrower disputing its accuracy, and provides that "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," the person reporting the information must conduct an investigation into the dispute and correct any errors. 15 U.S.C. § 1681s–2(b)(1).

There is no private right to bring a cause of action based upon non-willful violations of 15 U.S.C. § 1681s–2(a), such a duty is left up to governmental and federal agencies. *See Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 842 (E.D. Mich. 2010) (observing that "[t]here can be no doubt that the duties imposed by 15 U.S.C. § 1681s–2(a) can only be enforced by government agencies and officials"). "While a consumer cannot bring a private cause of action for a violation of a furnisher's duty to report truthful information, a consumer may recover damages for a willful violation of 15 U.S.C. § 1681s–2(b)(1)(A)–(D)." *Bach v. Union  Nat. Bank.* 149 F. App'x 354, 358 (6th Cir.

14

2005). It is required, however, that the consumer file a complaint with a consumer reporting agency ("CRA"), who in turn notifies the servicer of the consumer's complaint; a consumer may not directly send a complaint to the servicer. *See Kovacs v. JPMorgan Chase & Co., Inc.,* No. 09-10862, 2010 WL 259049, at *3 (E.D. Mich. Jan. 20, 2010); *see also Yaldu v. Bank of Am. Corp.* 700 F. Supp.2d 832, 843 (E.D. Mich. 2010) (observing that "a furnisher of credit information . . . has no responsibility to investigate a credit dispute until after it receives notice from a consumer reporting agency.").

Plaintiffs' FCRA claim does not survive Defendant Bank's motion to dismiss because Plaintiffs fail to provide factual support that: (1) Defendant Bank was notified of any error by a CRA, (2) Defendant Bank willfully failed to conduct a reasonable investigation concerning the complaint, and (3) information was allegedly inaccurate.

Plaintiffs seek leave to file an amended complaint but any amendment would be futile. Plaintiffs have not and cannot allege facts showing that Defendant Bank received notice from a CRA and willfully failed to conduct a reasonable investigation, as required by 15 U.S.C. § 1681s–2(b)(1)

### 4.  Request for Equitable, Declaratory or Injunctive Relief: Count V

Plaintiffs' also seek equitable, declarative or injunctive relief to reverse the alleged wrongful foreclosure. Claims seeking this type of relief do not constitute a separate cause of action. Rather, they are forms of relief that the court may grant. *See Terlecki v. Stewart,* 754 N.W.2d 899, 912 (Mich. Ct. App. 2008) (observing that "[i]t is well settled that an injunction is an equitable remedy, not an independent cause of action."). "It is not the remedy that supports the cause of action, but rather the cause of action that supports the remedy." *Id.*

15

**5. Claim Under the Equal Credit Opportunity Act: Count XXIII**

Plaintiffs allege that Defendant Bank violated the Equal Credit Opportunity Act (ECOA), when it failed to provide Plaintiffs with written notice of the denial of their loan modification. However, the ECOA "notice requirements do not apply where the consumer requesting credit is delinquent or in default on an existing arrangement with the creditor." *Trina Davis v. Citi Mortgage, Inc.*, No. 10-12136, 2011 WL 891209, at *5 (E.D. Mich. March 11, 2011)(citing 15 U.S.C § 1691(d)(6)); *see also* 12 C.F.R. § 202.2(c)(2)(ii) (stating that adverse action does not include "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account"). "The default status of a consumer is determined at the time the creditor takes action with respect to the consumer, rather than at the time the consumer applies for credit." *Davis v. Citimortgage, Inc.,* 10-12136, 2011 WL 891209 (E.D. Mich. March 11, 2011); *see also Lewis v. ACB Bus. Servs. Inc.,* 135 F.3d 389, 406–07 (6th Cir. 1998) (observing that the filing of a lawsuit was not an adverse action that would trigger a statutory violation where the debtor was in default before the lawsuit was filed).

In October 2010, Plaintiffs applied for a loan modification and were approved for a trial plan in March 2011. (Compl. ¶ ¶ 11, 13.) In March 2012, Plaintiffs were denied a loan modification. (Compl. ¶ 18.) At that time, when Plaintiffs were denied their loan modification, they were in default. Therefore, Plaintiffs cannot state a plausible ECOA claim. For this reason, this Court denies Plaintiff's motion seeking leave to amend as it would be futile.

16

### C. Abandoned Claims

Plaintiffs have voluntarily dismissed sixteen of the claims alleged in their complaint pursuant to Federal Rule of Civil Procedure 41. Even though Plaintiffs ask for a dismissal without prejudice, their voluntarily abandoned claims are dismissed with prejudice because they concede that they cannot state these claims for relief. (Pl.'s Resp. at 12.)

### IV.   Conclusion

For the above stated reasons, Defendant's motion to dismiss is GRANTED, and Plaintiffs' request for leave to amend on all counts is DENIED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  June 18, 2013June 18, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 18, 2013June 18, 2013, by electronic and/or ordinary mail.

s/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol Hemeyer

17